# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# Roanoke Division

| | |
|---|---|
| **BRANDON LUKE HERRON,** ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:17cv00560 |
| ) | **MEMORANDUM OPINION** |
| **BERLIN W. SKEEN, III,** ) | |
|    Defendant. ) | |

The plaintiff, Brandon Luke Herron, ("Herron"), an inmate formerly incarcerated at the Southwest Virginia Regional Jail Authority, ("Jail"), in Duffield, Virginia,[1] and proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendant, Berlin W. Skeen, III, a Jail correctional officer, verbally threatened and assaulted him on October 30, 2017, in violation of his Eighth Amendment rights. Herron seeks monetary damages.[2] This case is before the court on Skeen's Motion For Summary Judgment And Memorandum In Support, claiming Herron's claim should be dismissed for failure to exhaust his administrative remedies, (Docket Item No. 45) ("Motion"). Herron did not respond to the Motion. Based on the evidence before the court, I will grant the Motion and enter summary judgment in the defendant's favor.

---

[1] By letter received February 25, 2019, Herron informed the court that he had been released from custody. (Docket Item No. 44.)

[2] Herron also sought, in the alternative, "time on [his] charges gone." However, Herron has now been released from custody.

## I. Facts[3]

Although not critical to the court's decision on the Motion, I will state a summary of the facts underlying Herron's lawsuit, as set out in the court's February 12, 2019, Amended Opinion And Order, found at Docket Item No. 43. In his Complaint,[4] Herron claims that Skeen assaulted him on October 30, 2017. When Herron's claims arose, he was confined at the Jail's Duffield, Virginia, facility. On October 30, 2017, another inmate told Herron that the defendant, Officer Berlin W. Skeen, III, had dared Herron "to flood [his] cell" during pill call. (Docket Item No. 37.) As Skeen came by, Herron got on the floor of his cell and yelled under the door, "Fuck you, Skeen. Go kill yourself." (Docket Item No. 37.) Another officer told Herron to pack his things because he was going to "the hole." (Docket Item No. 37.) Herron thought the officer was joking with him, as officers often did, and said, "[Y]ou are full of shit and … I'm not going to the hole. I didn't do anything wrong." (Docket Item No. 37.) Herron then went to pill call. Skeen told him again to pack his things to go to the hole. Still thinking that the officers were joking, Herron said, "Fuck you, no, fuck off." (Docket Item No. 37.)

Then, Sgt. Rhymer ordered Herron to pack his things. Eventually, Herron went to pack his property, although he continued complaining. Skeen followed

---

[3] On a motion for summary judgment, the court may review a number of materials to determine whether a genuine dispute of any material fact exists, including sworn testimony, affidavits, sworn pleadings, discovery responses and other materials contained in the record. *See* FED. R. CIV. P. 56(C).

[4] Herron's Original Complaint named the Jail and the Duffield facility as defendants. The court dismissed it for failure to state a claim. However, the court also granted Herron an opportunity to amend to identify a proper defendant. Thereafter, Herron named Skeen as the defendant to the allegations contained in the Original Complaint. (Docket Item Nos. 19, 37.) This Amended Complaint will be considered, along with the Original Complaint, in deciding the Motion. Collectively, they will be referred to as the Complaint.

him.  In his cell, Herron finished drinking a cup of coffee and threw it at his bunk in the back of the cell.  Then he turned around to face Skeen, who said, "I told you to give me the chance and I will put you in the hole."  (Docket Item No. 37.)  Skeen also called Herron obscene names.  Herron then said, "Fuck you Pussy, if you want to fuck me up so bad, then let's get it."  (Docket Item No. 37.)  Herron tried to turn back to his packing.  Before he could do so, Skeen entered the cell, pushed Herron into the bunk, hit him in the face, pushed him to the ground and began "stomping [Herron's] entire body."  (Docket Item No. 37.)  Herron says he "pass[ed] out due to the pain on [his] back."  (Docket Item No. 37.)  As Herron came to, bleeding from his face, he saw Rhymer enter the cell and pull Skeen away.  Virginia State Troopers came to the Duffield facility, took pictures and prepared reports.  No criminal charges were filed.

On both Herron's Original Complaint and his Amended Complaint form, he checked the box indicating that he had not filed any grievances regarding the facts of those Complaints. (Docket Item No. 1 at 1; Docket Item No. 19 at 1.) In a statement attached to his Original Complaint, Herron stated that he did not exhaust the grievance process because he was moved to another jail, preventing him from being able to file the grievance paperwork to exhaust all avenues of the grievance process. (Docket Item No. 1 at 5.)

As stated above, Herron did not respond to the Motion.  This failure to respond leaves uncontroverted those facts relied upon by the defendant in the Motion.  *See In re Fisherman's Wharf Fillet, Inc.*, 83 F. Supp. 2d 651, 654 (E.D. Va. 1999).  However, the defendant still bears the burden of showing that the uncontroverted facts entitle him to judgment as a matter of law.  *See Fisherman's Wharf*, 83 F. Supp. 2d at 654.  "Thus, the Court, in considering a motion for

summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Fisherman's Wharf*, 83 F. Supp. 2d at 654 (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993)). In support of his Motion, the defendant has supplied a sworn affidavit from Jeannie Patrick, the Administrative Lieutenant at the Jail. (Docket Item No. 45-1, Affidavit of Jeannie Patrick, ("Patrick Affidavit")). Patrick stated that, as Administrative Lieutenant, she was familiar with the Jail's procedures and policies, including the Administrative Redress Program, also known as the Grievance Procedure. (Patrick Affidavit at 1.) She further stated that she had access to inmate records regarding grievances and appeals under the Grievance Procedure. (Patrick Affidavit at 1.) Patrick stated that the Jail's Grievance Procedure is outlined in the Inmate Handbook, which was attached as Exhibit 1 to her Affidavit. (Patrick Affidavit at 1.) Patrick stated that all Jail inmates, including Herron, are oriented as to this Grievance Procedure and how to access the Inmate Handbook when they are received at a Jail facility, including transfers between Jail facilities. (Patrick Affidavit at 1.)

Patrick stated that the Jail's Grievance Procedure requires an inmate to first make a good faith attempt to resolve his issue through informal channels. (Patrick Affidavit at 1.) If this does not resolve the issue, the inmate must file a grievance within seven days of the alleged occurrence, she said. (Patrick Affidavit at 1.) A response to an inmate grievance will be given within nine days, and if an inmate is dissatisfied by a response, she said, the inmate must appeal in writing within seven days of receiving the response. (Patrick Affidavit at 1-2.) A review of the Inmate Handbook, attached as Exhibit 1 to Patrick's Affidavit, shows that it contains the following concerning the Jail's Grievance Procedure:

>     … There are four steps in filing a grievance:
> 1. You must make a good faith attempt to resolve the issue through informal channels by use of a Request Form or Medical Request Form which are located on the Kiosk, where available.
> 2. You may file a grievance upon dissatisfaction in the answer to the request form **within 7 days of the occurrence**. A grievance may be submitted on the Kiosk where available. If the Kiosk is not accessible, the inmate may be given a grievance form. All prerequisites of the grievance procedure must be exhausted prior to filing the grievance. The inmate shall place the grievance in the designated area for outgoing mail. If the issue is an emergency, it may be forwarded to the Shift Commander. If the Shift Commander finds the grievance to not be an emergency, then he/she will indicate said finding and forward[] [it] to the Grievance Officer.
> 3. The validity of the grievance will be reviewed to determine if it meets the definition of a grievance and if proper informal resolution attempts have been made. If it is not valid, it will be returned to you **within nine (9) days of receipt** stating the reason it is not valid. If your grievance is valid, **there shall be a written finding returned to you for every submitted grievance form within nine (9) days of receipt.**
> 4. When you receive a response to a grievance and [are] not satisfied, you may appeal the result, in writing, **within 7 days of receipt of the response,** to the Chief of Security, who will process the appeal.

(Docket Item No. 45-2 at 27-28) (emphasis in original). The Inmate Handbook does not list a time period for a response to request forms or medical request forms. Patrick stated that the Jail operates four detention facilities, and a grievance filed at one of these facilities regarding an issue at another facility is addressed in the same manner as though the inmate were at the offending facility. (Patrick Affidavit at 1, 2.) In other words, regardless of the Jail facility in which an inmate is housed, the Grievance Procedure is available to address issues that arise at any other Jail facility. (Patrick Affidavit at 2.)

Patrick stated that a review of Herron's inmate grievance file showed that Herron did not properly exhaust his administrative remedies as to Skeen's alleged October 30, 2017, assault and threats, in that Herron did not file any grievance related to these events. (Patrick Affidavit at 2.) According to Patrick, Herron did, however, file other informal and formal grievances, all of which were unrelated to the subject matter of his current litigation, during the same timeframe as the alleged assault by Skeen, thus demonstrating that he was familiar with and able to avail himself of the Grievance Procedure. (Patrick Affidavit at 2.) As noted above, Herron alleged in his Complaint that he could not properly exhaust administrative remedies under the Jail's Grievance Procedure because he was transferred to another Jail facility.[5] Also as stated above, Herron has not responded to Skeen's Motion.

## II. Analysis

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In

---

[5] A review of the docket reveals that, by the time Herron filed his Original Complaint in December 2017, he was housed at the Jail's Haysi, Virginia, facility. (Docket Item No. 1-1.) There is no evidence in the record that Herron was transferred to any other facility between his incarceration at the Duffield facility and the Haysi facility.

considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky.*, 93 F.3d 230, 233 (6th Cir. 1996). When a motion for summary judgment is made and is properly supported by affidavits, depositions or answers to interrogatories, the nonmoving party may not rest on the mere allegations or denials of the pleadings. *See Oliver v. Va. Dep't of Corrs.*, 2010 WL 1417833, at *2 (W.D. Va. Apr. 6, 2010) (citing FED. R. CIV. P. 56(e)). Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. *See Anderson*, 477 U.S. at 256-57.

The Prison Litigation Reform Act of 1995, ("PLRA"), requires a prisoner to exhaust any available administrative remedies before challenging prison conditions in federal court. *See* 42 U.S.C.A. § 1997e(a) (West 2012). It provides as follows: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a). Exhaustion is mandatory under § 1997e(a), and courts have no discretion to waive the requirement. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "[F]ailure to exhaust is an affirmative defense under the PLRA" and, therefore, must be both pled and proven by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007). A prisoner must exhaust administrative

remedies even where the relief sought, such as monetary damages, cannot be granted by the administrative process. *See Woodford*, 548 U.S. at 85 (citing *Booth*, 532 U.S. at 734). The Supreme Court has instructed that the PLRA "requires proper exhaustion." *Woodford*, 548 U.S. at 93. Proper exhaustion of administrative remedies for PLRA purposes means using all steps that the agency holds out, and doing so properly, so that the agency addresses the issues on the merits. *See Woodford*, 548 U.S. at 90. Therefore, in order to satisfy the exhaustion requirement, the inmate must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his action to court. *See Woodford*, 548 U.S. at 90.

All of this being said, then, before Herron may proceed with his claim in this court, he must first have exhausted the administrative remedies available to him through the Jail's Grievance Procedure. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). "[W]hen prison officials prevent inmates from using the administrative process …, the process that exists on paper becomes unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Based on the evidence before the court, I find that there is no genuine dispute of material fact, and that, based on these undisputed facts, Herron did not properly exhaust his administrative remedies before filing suit. The undisputed facts before the court show that, to fully exhaust all administrative remedies available under the Jail's Grievance Procedure, a Jail inmate must, after first attempting to exhaust informal measures to remedy his complaint, file a written grievance within seven days of the aggrieving event. Herron has conceded that he

did not file any grievance within seven days of the alleged October 30, 2017, assault by Skeen, nor did he ever do so. Also, the court may not excuse a prisoner from the requirement that he utilize all *available* administrative remedies before filing suit. *See Woodford*, 548 U.S. at 85 (emphasis added). Although Herron claimed that he did not file any grievances because he was transferred to another facility, thereby making it impossible for him to do so, Patrick stated in her sworn Affidavit that an inmate may file a grievance, based on incidents at one Jail facility, at any of the other three Jail facilities, and it will be treated in a manner as though it were filed at the facility were the incident complained of occurred. The docket sheet reveals that Herron was transferred from the Duffield facility to the Haysi facility, two of the four jails comprising the Southwest Virginia Regional Jail Authority system. Therefore, to the extent that Herron's statement may be construed as an argument that the Grievance Procedure was unavailable to him, I am not persuaded. As stated above, "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725. "[W]hen prison officials prevent inmates from using the administrative process …, the process that exists on paper becomes unavailable in reality." *Kaba*, 458 F.3d at 684. Here, there is undisputed evidence that Herron was aware of the Jail's Grievance Procedure and that he had utilized it with respect to issues unrelated to the facts underlying the merits of his current lawsuit around the same time period as he alleges that Skeen assaulted him on October 30, 2017. The defendant has provided evidence from Patrick, the Administrative Lieutenant at the Jail, that Herron was oriented to the Grievance Procedure and how to obtain a copy of it when he was booked into the Duffield facility. According to Patrick's sworn Affidavit, Herron also would have been oriented to it when he was transferred to the Haysi facility. Thus, any failure to avail himself of the Grievance Procedure, was Herron's own fault, not that of

prison officials.  Likewise, I find that prison officials did not prevent Herron from using the Grievance Procedure.  All of this being the case, I find any argument by Herron that the Grievance Procedure was unavailable to him due to his transfer to another Jail facility, unpersuasive.

Based on the above, I will enter summary judgment in the defendant's favor.

ENTERED: August 8, 2019.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE